**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JENAM TECH, LLC, | | |
| *Plaintiff*, | | |
| v. | | Case No. 4:19-cv-00249-ALM-KPJ |
| LG ELECTRONICS, INC. and LG ELECTRONICS MOBILECOMM U.S.A., INC. | | **FILED UNDER SEAL** |
| *Defendants*. | | |

**DEFENDANTS' MOTION TO TRANSFER VENUE TO
THE NORTHERN DISTRICT OF CALIFORNIA**

███████

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................................... 3

      A.    Jenam's Infringement Allegations Hinge on Software Features Provided
            by Third-Party Google ......................................................................................... 3

      B.    Relevant LG Employees and Documents Are Not Located in This District ......... 5

      C.    Third-Party Google and Other Third Parties With Relevant Knowledge To
            The Accused QUIC Protocol and Google Chrome Have No Connection To
            This District ........................................................................................................ 6

      D.    Jenam Has Only Limited Connection To This District ........................................ 7

III.  LEGAL STANDARD ..................................................................................................... 8

IV.   THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT ........ 9

V.    THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER TO
      THE NORTHERN DISTRICT ........................................................................................ 9

      A.    The Northern District Is Far More Convenient For Potential Witnesses .............. 9

            1.    The Northern District is More Convenient for LG Witnesses ................... 9

            2.    The Northern District is More Convenient for Non-Party Witnesses
                  And Has Absolute Subpoena Power Over Necessary Third-Party
                  Witnesses ............................................................................................... 11

      B.    The Sources Of Proof Are More Easily Accessed In The Northern District ....... 13

      C.    No Practical Problems Exist With Transferring This Action To The
            Northern District ............................................................................................... 14

VI.   THE PUBLIC INTEREST FACTORS FAVOR TRANSFER OR ARE
      NEUTRAL ................................................................................................................... 14

      A.    The Northern District Has A Greater Interest In This Action ............................ 14

      B.    The Remaining Public Factors Are Neutral ...................................................... 15

VII.  CONCLUSION ............................................................................................................ 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ..................................................................9, 12

*In re Apple, Inc.*,
  581 Fed. Appx. 886 (Fed. Cir. 2014) .........................................................................11

*Blue Spike, LLC. v. Tex. Instruments, Inc.*,
  Nos. 6:12-cv-499, 2014 U.S. Dist. LEXIS 52426 (E.D. Tex. Mar. 13, 2014) ...........9

*Bush Seismic Techns. LLC v. Am. Gem Soc'y*,
  No. 2:14-cv-1809-JRG, 2016 WL 1545855 (E.D. Tex. Apr. 15, 2016) ...................13

*Cypress Lake Software, Inc. v. HP Inc.*,
  Case No. 6:17-cv-00462 ...............................................................................................1

*Cypress Lake Software, Inc. v. Samsung Electronics America, Inc.*,
  Case No. 6:18-cv-30-JDK ...........................................................................................13

*EON Corp. v. Sensus Inc.*,
  2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ...........................................................11, 12

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009) .......................................................................8, 9, 11, 13

*In re Hoffman-La Roche*,
  587 F.3d at 1336 .....................................................................................................12, 15

*In re HP, Inc.*,
  2018-149, Dkt. No. 16, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ......................1

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ...................................................................................11

*Network Prot. Sciences, LLC v. Juniper Networks, Inc.*,
  No. 10- cv-224-JRG, 2012 U.S. Dist. LEXIS 7575 (E.D. Tex. Jan. 23, 2012) ........15

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) ...........................................................................8, 9, 13

*Omni MedSci, Inc. v. Apple Inc.*,
  No. 2:18:cv-00134-RWS, D.I. 279 (E.D. Tex. Aug. 14, 2019) .................................15

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Porto Tech. Co., Ltd. v. Samsung Electronics Am., Inc., et al.*,
No. 2:15-cv-0456-JRG-RSP (E.D. Tex. March 11, 2016)...................................................2, 12

*Ryujin Fujinomaki, v. Google Inc., et al.*,
No. 2 :15-cv-1381-JRG-RSP (E.D. Tex. May 13, 2016)....................................................2, 12

*Texas Data Co., LLC v. Target Brands, Inc.*,
771 F. Supp. 2d 630 (E.D. Tex. Jan. 12, 2011)..........................................................................9

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014)..............................................................................................3, 8

*TransUnion Intelligence LLC v. Search Am., Inc.*,
2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ...........................................................................14

*In re Verizon Bus. Network Servs. Inc.*,
635 F.3d 559 (Fed. Cir. 2011)...........................................................................................10, 14

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ........................................................................................8, 14, 15

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ...................................................................................8, 9, 10, 15

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2009)...............................................................................................11

**Statutes, Rules and Regulations**

28 U.S.C. § 1331.........................................................................................................................9

28 U.S.C. § 1338(a).....................................................................................................................9

28 U.S.C. § 1391(b).....................................................................................................................9

28 U.S.C. § 1391(c).....................................................................................................................9

28 U.S.C. § 1404(a) ........................................................................................................1, 8, 9, 16

█████████████████████

## I.      INTRODUCTION

Plaintiff Jenam Tech, LLC ("Jenam") asserts two patents against LG Electronics, Inc. ("LGEKR") and LG Electronics Mobilcomm U.S.A., Inc. ("LGEMU") (collectively, "LG"), alleging infringement by LG's smartphones and tablets preinstalled with Google Chrome and Google's implementation of the QUIC protocol. (Dkt. 1, "the Complaint").[1] Jenam's infringement allegations, as described in the Complaint, hinge on the functionality of Google's implementation of the QUIC protocol (hereafter "Google's QUIC protocol")—software that is not LG's but rather is provided to LG by third-party Google LLC ("Google"). (Dkt. 1 at Exs. C and D).

The most convenient forum for this case is the Northern District of California ("Northern District").[2] *First*, this case bears little to no connection to this District. In many ways, this case presents facts similar *Cypress Lake Software, Inc. v. HP Inc.*, where the Northern District was the most convenient forum for the case. *See In re HP, Inc.*, 2018-149, Dkt. No. 16, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) (*Cypress Lake* had common parties in interest with Jenam and was asserting a patent with common inventorship). As with *In re HP*, the accused technology may be on defendants' products, but was created and designed by Google. *Id*. at *2. ██████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

---

[1] LGEMU merged into LG Electronics U.S.A., Inc. ("LGEUS") effective August 1, 2018. Until the merger, LGEMU was a wholly-owned subsidiary of LGEUS. (LG Decl., ¶ 3).

[2] Jenam also sued Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. alleging infringement of the same two patents in this Court. Case No. 4:19-cv-00250-ALM-KPJ (E.D. Tex.) Samsung also is moving to transfer its case pursuant to 28 U.S.C. § 1404(a).

████████████████████████████

*Second*, the Northern District is the most convenient forum for party and potential third-party witnesses. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ Given that Google is a third party to this action, its employees cannot be compelled to testify in this District. Likewise, the Complaint cites documents referencing former Google employees in connection with the implementation of Google's QUIC protocol, such as Jim Roskind and Janardhan Iyengar; these individuals reside in the Northern District and also cannot be compelled to testify in this District. (Exhibit C, Decl. of Robert Pluta (hereinafter "Pluta Decl.") at Ex. 1). Therefore, this case is akin to *Ryujin Fujinomaki, v. Google Inc., et al.*, No. 2 :15-cv-1381-JRG-RSP, at 3 (E.D. Tex. May 13, 2016) and *Porto Tech. Co., Ltd. v. Samsung Electronics Am., Inc., et al.*, No. 2:15-cv-0456-JRG-RSP, at 3 (E.D. Tex. March 11, 2016), which involved Defendants LG and Samsung's use of Google products as well as third-party witnesses located in the Northern District of California. Based on these similar facts, this Court transferred those cases to the Northern District.

Moreover, LGEKR, headquartered in Korea, ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



In contrast, there are no identified relevant witnesses—or at least only minimally relevant witnesses—in this District. In view of the strong connection to the Northern District and lack of connection to this District, the Court should transfer this case to the Northern District.[3]

## II.   FACTUAL BACKGROUND

### A.   Jenam's Infringement Allegations Hinge on Software Features Provided by Third-Party Google

The infringement allegations included in Jenam's Complaint target Google Chrome's use of Google's QUIC protocol. They are not tied to any specific feature in any accused device. Indeed, Jenam's infringement charts against LG and Samsung are nearly identical despite fact that different types of devices are accused of infringement. (*Compare* Dkt. 1 at Ex. C, p. 2 and Ex. D, p. 2 *with* Dkt. 1 at Ex. C, p. 2 and Ex. D, p. 2, Case No. 4:19-cv-00250-ALM-KPJ (E.D. Tex.)). For example, Jenam's infringement allegations against LG are directed to only smartphones and tablets while Jenam's infringement allegations against Samsung include laptops. *See* Dkt. 1, at 3, Case No. 4:19-cv-00250-ALM-KPJ (E.D. Tex.). Despite the differences between the accused devices, Jenam's

---

[3] Given that LG and Google are large companies, they may have some employees with knowledge of the accused products that reside outside the Northern District. That, however, is irrelevant to the transfer analysis: "The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

allegations regarding Google's QUIC protocol are largely the same. (*Id.*) The Complaints assert:

| Samsung Complaint (Dkt. 1) | LG Complaint (Dkt. 1) |
| --- | --- |
| **QUIC has been globally deployed at Google** on thousands of servers and used to serve traffic to a range of clients including a widely-used web browser (Chrome)…. (Ex. C, D, pg. 3) | **QUIC has been globally deployed at Google** on thousands of servers and used to serve traffic to a range of clients including a widely-used web browser (Chrome)···. (Ex. C, D, pg. 2) |
| Android devices, including the Samsung Galaxy S9, **come with Google Chrome pre-installed** on the device at the time of purchase. (Ex. C, D, pg. 4) | LG's smartphones and tablets having the Android operating system **come preinstalled with Google Chrome**. (Ex. C, D, pg. 2) |
| Samsung Galaxy S9 Android Smartphone, via Google Chrome, **communicates using the QUIC protocol** which, in turn, **mandates that the Samsung Galaxy S9 Android Smartphone necessarily include** an apparatus including . . . . (Ex. C, D, pg. 2) | The Accused Device **communicates using the QUIC protocol** which, in turn, **mandates that the Accused Device necessarily include** an apparatus including a . . . . (Ex. C, D, pg. 2) |
| For instance, a **Google Chrome client** receives, by a second node from a first node, a transmission control protocol (TCP)-variant packet (e.g., **QUIC negotiation packet**, etc.) . . . . (Ex. C, pg. 2) | For instance, a **Google Chrome client** receives, by a second node from a first node, a transmission control protocol (TCP)‐variant packet (e.g., **QUIC negotiation packet**, etc.) . . . . (Ex. C, pg. 2) |
| Samsung Galaxy S9 Android Smartphone, via Google Chrome, **communicates using the QUIC protocol** which, in turn, **mandates that** the Samsung Galaxy S9 Android Smartphone . . . . (Ex. C, pg. 5) | The Accused Device **communicates using the QUIC protocol** which, in turn, **mandates that** the Accused Device . . . . (Ex. C, pg. 4) |
| Samsung Galaxy S9 Android Smartphone, via Google Chrome, **communicates using the QUIC protocol**. . . . (Ex. C, pg. 7) | The Accused Device **communicates using the QUIC protocol**. . . . (Ex. C, pg. 6) |
| Samsung Galaxy S9 Android Smartphone, via Google Chrome, **communicates using the QUIC protocol** . . . . (Ex. D, pg. 5) | The Accused Device **communicates using the QUIC protocol** . . . . (Ex. D, pg. 4) |
| Further **a Google Chrome client**, when operating in accordance with **the second protocol (e.g. QUIC)** to establish a second protocol connection (e.g. QUIC connection), . . . .(Ex. D, pg. 5) | Further **a Google Chrome client**, when operating in accordance with **the second protocol (e.g. QUIC)** to establish a second protocol connection (e.g. QUIC connection), . . . . (Ex. D, pg. 4) |

(Dkt. 1 at Exs. C and D (emphasis added)). Simply put, Jenam's allegations focus exclusively on

4

███████████████████████

the software features and functionality of Google's QUIC protocol used by Google Chrome. ██

████████████████████████████████████████████

██████

### B.      Relevant LG Employees and Documents Are Not Located in This District

LGEKR makes technology products such as smartphones, tablets, and other devices. (*Id*. ¶

9). LGEKR is responsible for designing, engineering, sourcing components, and manufacturing

the Accused Devices. (*Id*. ¶ 7). LGEKR's headquarters are in Seoul, Korea. (*Id*. ¶ 7). Thus, all of

this work is done outside the United States, mostly in South Korea. (*Id*.) In addition, LGEKR does

not have offices in the United States, let alone in EDTX, therefore, technical documents are also

located outside of the United States. (*Id*. ¶ 19). LGEMU was a California corporation with offices

in San Jose, California. (*Id*. ¶ 8). ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

███████████████

████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

**C.     Third-Party Google and Other Third Parties With Relevant Knowledge To The Accused QUIC Protocol and Google Chrome Have No Connection To This District**

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[4] This case was filed on April 3, 2019. Dkt. 1. Prior to procedural extensions granted to Jenam, this Motion to Transfer was set to be filed by its original due date on October 1, 2019.



████ Indeed, Jenam's Complaint cites a paper entitled "The QUIC Transport Protocol: Design and Internet-Scale Deployment" to support its allegations. (Dkt. 1 at Exs. C and D). ████████████████████████████████████████████████████████████

██ ████████████████████████████████████████████████████

████████████████████ None are located in this District. Further, at least two of the six authors are former Google employees, such as Jim Roskind and Janardhan Iyengar, reside in the Northern District, and none of the former Google employees are located in this District. (Pluta Decl. at Ex. 1).

### D. Jenam Has Only Limited Connection To This District

Each asserted patent lists Robert Paul Morris as the sole inventor and identifies Mr. Morris as a resident of Raleigh, North Carolina. (Dkt. 1 at Exs. A and B). Sitting Man, LLC, the original assignee of the asserted patents, is a Delaware company with its principal place of business in North Carolina. (Pluta Decl. at Ex. 2). LG is not aware of any connections that Mr. Morris and Sitting Man have to this District; they appear to be based in North Carolina.

Jenam, the alleged assignee of the asserted patents, states that it is a Texas company based in Longview, Texas. (Dkt. 1, ¶ 1). There is no evidence that Jenam engages in any business other than patent assertion, nor is there is any evidence that any employee of Jenam was involved in the development of the asserted patents. In fact, Jenam appears to be an affiliate of Oso IP LLC, based in the Northern District. (Pluta Decl. at Ex. 3). Principals of Oso IP are California lawyers Kevin Zilka and George Andrew Gordon. (*Id*.) Mr. Gordon is also a principal of Jenam. (Pluta Decl. at Ex. 4). Besides Oso IP LLC's office in Northern California (where Mr. Zilka lives), both Oso IP LLC and Jenam share the same office suite in Longview, Texas. (Pluta Decl. at Exs. 4, 10).

### III.     LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The law of the local circuit in which the case was originally brought governs the analysis of a transfer motion. *See In re Genentech,* 566 F.3d 1338, 1341-42 (Fed. Cir. 2009). The movant must first show that the case could have been brought in the proposed transferee district. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I").* If so, the court evaluates the relative convenience of the transferee district and the original district. This analysis involves private and public interest factors. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to ensure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II").* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* The transferee forum is "clearly more convenient" where most potential witnesses and relevant evidence are concentrated in the transferee district. *See In re Nintendo Co.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009). The presence of witnesses and evidence outside both forums does not factor into the transfer analysis. *See Toyota,* 747 F.3d at 1340. Likewise, plaintiff's choice of venue is not relevant because the "Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *Nintendo,* 589 F.3d at 1200.

## IV.     THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT

The threshold determination under §1404(a) "is whether [the] civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. A case could have been brought in the transferee court if that court has subject matter jurisdiction over the claims and personal jurisdiction over the defendant, and if it is a proper venue for the case. *Blue Spike, LLC. v. Tex. Instruments, Inc.*, Nos. 6:12-cv-499 and 6:12-cv-558, 2014 U.S. Dist. LEXIS 52426, at *98 (E.D. Tex. Mar. 13, 2014).

Here, the Northern District has subject matter jurisdiction over Jenam's patent claims under 28 U.S.C. §§ 1331 and 1338(a). Also, personal jurisdiction and venue is proper in that District because, for purposes of this case, LGEUS regularly conducts business, maintains offices and employs personnel in the Northern District and LGEKR can be sued in that District as a foreign corporation, as well as through its contacts with LGEUS. *See* 28 U.S.C. §§ 1391(b) and (c).

## V.     THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER TO THE NORTHERN DISTRICT

### A.     The Northern District Is Far More Convenient For Potential Witnesses

"The convenience of the witnesses is probably the single most important factor." *Genentech,* 566 F.3d at 1343. "The Court must consider the convenience of both the party and non-party witnesses." *Texas Data Co., LLC v. Target Brands, Inc.,* 771 F. Supp. 2d 630, 644 (E.D. Tex. Jan. 12, 2011). Of these, "the convenience to non-party witnesses is afforded greater weight." *Adaptix, Inc. v. HTC Corp.,* 937 F. Supp. 2d 867, 875 (E.D. Tex. 2013). Here, the relevant third-party witnesses reside in the Northern District. As a result this factor weighs in favor of transfer.

### 1.     *The Northern District is More Convenient for LG Witnesses*

The Northern District is clearly more convenient for LG's witnesses given that relevant individuals work in that district. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

███████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████ the most

relevant witnesses related to the technology at issue will be Google witnesses located in the

Northern District. For other LG witnesses, located in Seoul, Korea, the Northern District is also

more convenient because it presents a shorter distance to travel from Korea than to Sherman, Texas

(*e.g.*, 5,607 miles vs. 6,815 miles, saving 1 hour, 45 minutes of flight time). (Pluta Decl. at Exs. 5,

6).

Each of those potentially relevant witnesses will face real and avoidable burdens if they

are required to travel to Sherman, Texas for a trial. This burden is not only based on monetary

expense and loss of productivity for LG, which is significant, but also on the witnesses' time spent

away from family, personal, and local community commitments. *See In re Verizon Bus. Network*

*Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (ordering transfer given the "stark contrast in

convenience and fairness with regard to the identified witnesses"). In such circumstances, the Fifth

Circuit instructs that "personal costs associated with being away from work, family, and

community" counsel in favor of transfer. *Volkswagen II*, 545 F.3d at 317.

The fact that there are numerous LG witnesses located in the Northern District (or Korea)

outweighs any consideration afforded to Jenam's alleged office in Longview, Texas. For example,

Jenam only recently acquired the patents-in-suit from Sitting Man, LLC in November 2018. (Pluta

Decl. at Ex. 7). Jenam's office address is identical to Oso IP's Texas address, and that of several

other companies owned, managed, or controlled by Messrs. Zilka and Gordon. (Pluta Decl. at Ex.

4). Not only do these entities share the same address, they share the same office suite. (*Id*.) It is

apparent from these basic facts that Jenam has no real connection to this District, other than a shell

office. As the Federal Circuit explains, it is a "fallacious assumption that this court must honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *In re Microsoft Corp.,* 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *see In re Zimmer Holdings, Inc.,* 609 F.3d 1378, 1381 (Fed. Cir. 2009) (ordering transfer despite plaintiff's principal place of business being located in Texas); *EON Corp. v. Sensus Inc.,* 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012) (plaintiff's establishment of a "litigation and licensing" office in this District was outweighed by defendants' presence in the Northern District "where the decisions and events giving rise to this case likely were made or occurred").

### 2. The Northern District is More Convenient for Non-Party Witnesses And Has Absolute Subpoena Power Over Necessary Third-Party Witnesses

The "fact that the transferee venue is a venue with usable subpoena power … weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. This consideration has heightened importance in this case because (1) Jenam's infringement allegations focus exclusively on Google's QUIC protocol; (2) Google is a third party with the best knowledge regarding the functionality of QUIC; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (4) key former Google employees involved in developing QUIC reside in the Northern District; and (5) Kevin Zilka, a manager of Oso IP LLC, Jenam's affiliate, and a third-party witness with knowledge with respect to potential damages in this case, resides in the Northern District. *See supra* at pp. 3-7. Accordingly, "[t]his factor will weigh in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.,* 581 Fed. Appx. 886, 889 (Fed. Cir. 2014).

Courts favor transfer where, as here, "a transferee district has absolute subpoena power *over a greater number of non-party witnesses"* than the transferor district. *Adaptix,* 937 F. Supp. 2d at 874 (emphasis added). The Northern District's "'absolute subpoena power' (for depositions

██████████████████████████████

as well as trial) over non-parties . . . is a significant consideration in the venue analysis." *EON Corp.*, 2012 WL 122562 at *3.

Here, the Northern District has absolute subpoena power over relevant third-party witnesses because courts in that District—unlike this District—can compel those witnesses to attend both depositions and trial. *See Hoffman La-Roche*, 587 F.3d at 1337-38. The existence of compulsory process is particularly important given that LG is not aware of any potential non-party witnesses who reside in this District, and Google's current employees and former employees residing in the Northern District possess the best knowledge and documentation on the accused QUIC protocol. ██████████████████████████████████████████

██████████████████████████████████████████████

███████ In *Ryujin Fujinomak*, No. 2 :15-cv-1381-JRG-RSP, at 3 and *Porto Tech. Co*, No. 2:15-cv-0456-JRG-RSP, at 3 the court faced similar facts as those presented in this motion. For example, in those cases Google products were accused, party and third party witnesses were located in the Northern District and the Northern District had the power to compel several identified third-party witnesses. *Id.* Based on these similar facts, the cases (which included defendants LG and Samsung) were transferred to the Northern District of California. *Ryujin Fujinomaki*, No. 2 :15-cv-1381-JRG-RSP, at 3; *Porto Tech. Co., Ltd.*, No. 2:15-cv-0456-JRG-RSP, at 3.

████████████████████████████████████████

███████████████████████████████████  ██████████████

████████████████████████████████████████

████████████████████████ None of these Google witnesses are located in the Eastern District of Texas. Of the six remaining authors, two of them (Jim Roskind and Janardhan Iyengar) also reside in the Northern District and none of them reside in this District. (Pluta Decl. at Ex. 1).

Finally, Kevin Zilka, manager of Oso IP LLC, is located in the Northern District. (Pluta Decl. at Ex. 9). Mr. Zilka will be a relevant witness with respect to potential damages. For example, Mr. Zilka may have relevant knowledge, documents and/or evidence regarding the acquisition and valuation of the patents-in-suit from Sitting Man LLC, Jenam's relationship with Sitting Man LLC, and the inventor of the patents, Robert Paul Morris.[5]

### B.       The Sources Of Proof Are More Easily Accessed In The Northern District

The access-to-proof factor "turns upon which party—usually the accused infringer—will most probably have the greater volume of documents relevant to the litigation and the presumed location of these documents in relation to the proposed and transferor venues." *Bush Seismic Techns. LLC v. Am. Gem Soc'y,* No. 2:14-cv-1809-JRG, 2016 WL 1545855, at *3 (E.D. Tex. Apr. 15, 2016) (citing *Nintendo*, 589 F.3d at 1199). Because Google designs, develops, and implements the QUIC protocol, the bulk of the relevant technical evidence and witnesses will come from Google. *See Genentech,* 566 F.3d at 1345.

As detailed above (*supra* at pp. 5-6),



. As a result, to the extent Jenam's allegations relate to the accused devices, the potentially relevant documents are located and can be accessed most easily in the Northern District. No such documentation exists in this District. (LG Decl., ¶¶ 13-16, 19-21).

---

[5] Mr. Zilka's relevance and relationship with the principal of Jenam, Mr. Gordon, and the inventor, Mr. Morris, and the assignee of the asserted patent, Sitting Man, can be seen from *Cypress Lake Software, Inc. v. Samsung Electronics America, Inc.*, Case No. 6:18-cv-30-JDK. The privilege logs served in the case by Cypress Lake, another company asserting Mr. Morris' and Sitting Man's patents, show numerous communications between Mr. Zilka, Mr. Morris and Mr. Gordon. Dkt. 428 (Order Granting Motion to Compel, Dkt. 236, attached as Ex. 8 to Pluta Decl.)

In contrast, Jenam is a non-practicing entity that allegedly acquired the asserted patents through assignment; it is likely to have few, if any, records relating to development of the claimed subject matter, prosecution of the patents, or other relevant information located in this District. And any of Jenam's documents in this District are here only as "artifacts of prior litigation" and carry no weight. *Verizon,* 635 F.3d at 562. Oso IP, LLC and Kevin Zilka may also have relevant documents in the Northern District.  Accordingly, this factor weighs in favor of transfer.

### C.   No Practical Problems Exist With Transferring This Action To The Northern District

No practical problems exist with transferring this case to the Northern District. This case is in the very early stages as: (1) LG moved to dismiss the Complaint on August 12, 2019, (2) the parties agreed to a 30-day stay of this case followed by two additional stays, (3) the parties have not served initial disclosures or discovery, (4) claim construction has not yet begun, and (5) no contentions have been exchanged. Accordingly, this factor is neutral, if not in favor of transfer given the minimal case activity and absence of any discovery. *See, e.g., TransUnion Intelligence LLC v. Search Am., Inc.,* 2011 WL 1327038, at \*5 (E.D. Tex. Apr. 5, 2011) (concluding that this factor is neutral given that only limited discovery occurred).

## VI.   THE PUBLIC INTEREST FACTORS FAVOR TRANSFER OR ARE NEUTRAL

### A.   The Northern District Has A Greater Interest In This Action

The local interest factor takes into account the preference to have localized interests decided at home. *Volkswagen I,* 371 F.3d at 206. In other words, this factor addresses the "factual connection" a case has with the transferee and transferor venues. *Id.* As the Fifth Circuit instructs, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* Here, it is clear that this action has far greater factual connection to the Northern District than to this District. *See supra* at pp. 3-7.

While the Accused Products in this case are available nationwide, the Northern District has a particularized local interest in resolving this dispute because the accused technology, implementation of Google's QUIC protocol, is maintained and managed by Google staff, engineers, and managers residing there. Local interest, thus, strongly favors transfer to the Northern District of California. *See, e.g., In re Hoffman-La Roche*, 587 F.3d at 1336 (destination venue's local interest in the case was "strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"); *Network Prot. Sciences, LLC v. Juniper Networks, Inc.*, No. 10- cv-224-JRG, 2012 U.S. Dist. LEXIS 7575, at *21 (E.D. Tex. Jan. 23, 2012) (local interest favored transfer from Texas where plaintiff had "small and fairly recent operations" to California where defendants were headquartered, developed the accused products, and employed thousands of people). Moreover, interests that "could apply virtually to any judicial district or division in the United States," such as nationwide sales of the allegedly infringing products, are disregarded for particularized local interests. *Volkswagen II*, 545 F.3d at 318. Thus, the local interest factor favors transfer to the Northern District.

## B.      The Remaining Public Factors Are Neutral

The remaining public interest factors are neutral. Court congestion is relatively equal between this District and the Northern District. *Omni MedSci, Inc. v. Apple Inc.,* No. 2:18:cv-00134-RWS, D.I. 279, at *8 (E.D. Tex. Aug. 14, 2019). Further, both venues are familiar with patent law and no conflict of law issue exists. *See TS Tech,* 551 F.3d at 1320-21.

## VII.    CONCLUSION

LG respectfully requests that this Court transfer this case to the Northern District pursuant to 28 U.S.C. § 1404(a).

Dated: November 18, 2019

By:

*/s/   Jamie   B.   Beaber,   with*
*permission by Michael E. Jones*

Jamie B. Beaber
Baldine B. Paul
Tiffany A. Miller
Saqib J. Siddiqui
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
jbeaber@mayerbrown.com
bpaul@mayerbrown.com
tmiller@mayerbrown.com
ssiddiqui@mayerbrown.com

Robert G. Pluta
Amanda Streff Bonner
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
rpluta@mayerbrown.com
asbonner@mayerbrown.com

Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
Patrick C. Clutter
SBN : 24036374
patrickclutter@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served this 18th day of November, 2019, with a copy of this document via electronic mail pursuant to Local Rule CV-5(d).

*/s/Michael E. Jones*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h). The personal conference required by Local Rule CV-7(h) was conducted on November 6, 2019 by telephonic conference with the following parties: Tim Devlin, Derek Dahlgren, Robert Pluta, Amanda Bonner, and Patrick Clutter. This motion is opposed.

*/s/Michael E. Jones*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to the terms of the applicable Protective Order attached to the Order Governing Proceedings (Dkt. 24).

*/s/Michael E. Jones*